# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEVEN MENZIES, an individual, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:21-CV-00249-SB |
| | ) | |
| SEYFARTH, SHAW LLP, | ) | Honorable Stephanos Bibas |
| an Illinois limited liability partnership; | ) | |
| GRAHAM TAYLOR, individually; | ) | |
| NORTHERN TRUST CORPORATION, | ) | |
| a Delaware corporation; and | ) | |
| CHRISTIANA BANK & TRUST | ) | |
| COMPANY, a Delaware corporation, | ) | |
| | ) | |
| *Defendants*. | ) | |

# DEFENDANT CHRISTIANA BANK & TRUST COMPANY'S
## MEMORANDUM IN SUPPORT OF ITS MOTION FOR
## <u>SUMMARY JUDGMENT ON THE RIGHT TO INDEMNITY</u>

Gary M. Elden
Amy Y. Cho
Peter F. O'Neill
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
(312) 704-7700
gelden@shb.com
acho@shb.com
pfoneill@shb.com

William E. Gamgort
Jennifer M. Kinkus
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 576-3267
wgamgort@ycst.com
jkinkus@ycst.com

*Counsel for Defendant Wilmington Savings Fund Society, FSB,*
*as successor-by-merger to Christiana Bank & Trust Company*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2

I.      Menzies Carries Out His Tax-Avoidance Strategy ................................................ 2

II.     Menzies Executes Contracts Requiring Him To Indemnify Christiana For The
        Claims Asserted By Menzies In This Case ............................................................. 2

        A.      The 2004 Trust ........................................................................................... 3

        B.      The 2003 And 2004 Directions To Substitute Assets ................................ 4

        C.      The Refunding Agreement And Release .................................................... 5

III.    Menzies Files Suit Against Christiana For Its Alleged Role In Menzies' Tax-
        Avoidance Scheme .................................................................................................. 6

IV.     Thus Far, Christiana Has Expended $1,174,111.68 In Fees And Costs To Defend
        Against Menzies' Claims ......................................................................................... 8

LEGAL STANDARDS ...................................................................................................... 8

ARGUMENT ...................................................................................................................... 9

I.      The Indemnity Provisions To Which Menzies Agreed Include Menzies' Claims In
        This Case ............................................................................................................... 10

        A.      Broadly-Written Indemnity Provisions Are Enforced In Delaware. ...... 10

        B.      Menzies' Claims Are "Claims," "Lawsuits," And "Suits," Which Resulted
                In "Loss[es]," And "Expense[s]" As Defined Under The Indemnity
                Provisions ................................................................................................. 12

        C.      Menzies' Claims Arise From Indemnifiable Actions Under The Indemnity
                Provisions ................................................................................................. 14

        D.      Menzies Failed To Establish That Christiana Was Grossly Negligent Or
                Engaged In Willful Misconduct ............................................................... 15

II.     Menzies' Affirmative Defenses Fail As A Matter Of Law .................................. 16

CONCLUSION ................................................................................................................. 20

31092597.1

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Alta Berkeley VI C.V. v. Omneon, Inc.*,
41 A.3d 381 (Del. 2012) .......................................................................................12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................................9

*Blue Cube Spinco LLC v. Dow Chem. Co.*,
No. CVN21C01214PRWCCLD, 2021 WL 4453460 (Del. Super. Ct. Sept. 29,
2021) .......................................................................................................................11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................................8

*Cooper v. Pottstown Hosp. Co LLC*,
651 F. App'x 114 (3d Cir. 2016) ...........................................................................19

*Cornerstone Brands, Inc. v. O'Steen*,
No. CIV.A. 1501-N, 2006 WL 2788414 (Del. Ch. Sept. 20, 2006) .......................16

*Delle Donne & Assocs., LLP v. Millar Elevator Serv. Co.*,
840 A.2d 1244 (Del. 2004) ....................................................................................11

*Dixon v. United States*,
548 U.S. 1 (2006)...................................................................................................16

*Dover Hist. Soc. v. City of Dover Plan. Comm'n*,
838 A.2d 1103 (Del. 2003) ....................................................................................13

*Ebbert v. DaimlerChrysler Corp.*,
319 F.3d 103 (3d Cir. 2003)...................................................................................16

*Frautschi v. Ecolab, Inc.*,
No. CV 12951-VCMR, 2018 WL 5733218 (Del. Ch. Oct. 31, 2018)....................9

*Hessein v. Am. Bd. of Anesthesiology Inc.*,
628 F. App'x 116 (3d Cir. 2015) ...........................................................................19

*Homestore, Inc. v. Tafeen*,
888 A.2d 204 (Del. 2005) ......................................................................................12

*In re Flat Glass Antitrust Litig.*,
385 F.3d 350 (3d Cir. 2004)....................................................................................9

*Int'l Rail Partners LLC v. Am. Rail Partners, LLC*,
   No. CV 2020-0177-PAF, 2020 WL 6882105 (Del. Ch. Nov. 24, 2020)................................11

*Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*,
   264 F.3d 365 (3d Cir. 2001)......................................................................................9

*Lighthouse Behav. Health Sols., LLC v. Milestone Addiction Counseling, LLC*,
   No. 2022-0979-MTZ, 2023 WL 3486671 (Del. Ch. May 17, 2023)......................................19

*Menzies v. Seyfarth Shaw LLP*,
   197 F. Supp. 3d 1076 (N.D. Ill. 2016) .........................................................................6

*Menzies v. Seyfarth Shaw LLP*,
   943 F.3d 328 (7th Cir. 2019) ..........................................................................7, 15, 18

*Menzies v. Seyfarth, Shaw LLP*,
   No. 15-cv-3403, 2018 WL 4538726 (N.D. Ill. Sept. 21, 2018)....................................7, 15, 18

*Menzies v. Seyfarth Shaw LLP*,
   No. 19-1125, 2020 WL 1906597 (U.S. Apr. 20, 2020) ...............................................7, 15, 18

*Meyers v. Quiz-DIA LLC*,
   No. CV 9878-VCL, 2017 WL 2438328 (Del. Ch. June 6, 2017) ...........................................12

*Nakahara v. NS 1991 Am. Tr.*,
   739 A.2d 770 (Del. Ch. 1998)...................................................................................11

*Osborn ex rel. Osborn v. Kemp*,
   991 A.2d 1153 (Del. 2010) .......................................................................................13

*Robertson v. Allied Signal, Inc.*,
   914 F.2d 360 (3d Cir. 1990).......................................................................................9

*Schneider Nat'l Carriers, Inc. v. Kuntz*,
   No. CV N21C-10-157-PAF, 2022 WL 1222738 (Del. Super. Ct. Apr. 25,
   2022) .................................................................................................................13

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...............................................................................................13

*Standard Gen. L.P. v. Charney*,
   No. CV 11287-CB, 2017 WL 6498063 (Del. Ch. Dec. 19, 2017)...........................................18

*Stockman v. Heartland Indus. Partners, L.P.*,
   No. CIV.A. 4227-VCS, 2009 WL 2096213 (Del. Ch. July 14, 2009)....................................11

*Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC*,
   No. CV 2019-0847-MTZ, 2023 WL 4857281 (Del. Ch. July 31, 2023) ................................19

**Statutes**

735 ILCS 5/12 *et seq.*............................................................................................7

Del. Code Ann. tit. 6 § 18-108..........................................................................11

Del. Code Ann. tit. 12, § 3801 *et seq.*............................................................3, 11

Del. Code Ann. tit. 12 § 3817 .......................................................................11, 12

**Rules**

FED. R. CIV. P. 56(a) ..........................................................................................8

## INTRODUCTION

Defendant Wilmington Savings Fund Society, FSB, as successor-by-merger to Christiana Bank & Trust Company ("Christiana") is entitled to recover the fees, costs and expenses it has incurred litigating this case for the last eight (8) years, including in two federal district courts, the United States Court of Appeals for the Seventh Circuit, and the Supreme Court of the United States. Steven Menzies does not dispute that he signed four (4) binding and valid contracts containing broadly-written indemnity provisions. Nor can he dispute that the claims he brought in this case are exactly the type of claims those indemnity provisions were meant to cover. This Court should accordingly grant this Motion, find that Christiana is entitled to recover its fees, costs and expenses, and set a briefing schedule on the amount Christiana is entitled to recover.

## SUMMARY OF ARGUMENT

1.      The indemnity provisions to which Menzies agreed include Menzies' claims in this case. All four provisions are broadly worded, and their language plainly applies to the claims Menzies asserted in this case as well as the underlying conduct that allegedly gave rise to those claims. As a result, Menzies must indemnify Christiana for the fees, costs and expenses it has incurred litigating this case.

2.      Menzies' affirmative defenses fail as a matter of law. This Court has already decided that Menzies failed to prove all of his claims against Christiana, and many of those claims rested on the same allegations supporting Menzies' affirmative defenses (*e.g.*, fraud, illegality). Those defenses that are not squarely foreclosed by this Court's previous orders (and it is not clear there are any) are otherwise insufficient as a matter of law because Menzies has no facts to support them. Menzies' affirmative defenses therefore fail, and Christiana is entitled to judgment as a matter of law on its right to indemnification.

## FACTUAL BACKGROUND

### I.     Menzies Carries Out His Tax-Avoidance Strategy.

In 2006, Menzies—the co-founder, President and Chief Operating Officer of a large financial services company—attempted to avoid millions of dollars in capital gains taxes, resulting from the $64.3 million dollar sale of his ownership interest to Berkshire Hathaway, Inc., by entering into a series of complex transactions. *See* Dkt. No. 1 ¶¶ 16, 36–40, 49–64 (detailing the scheme and series of transactions). As this Court previously recognized, the plan was "to eliminate Menzies's tax liability *legally*," by "creating several trusts and passing assets among them like a game of hot potato." Dkt. No. 353 at 2. Menzies originally "employed the services of Northern Trust, a tax-planning firm, to find a way around this." *Id.* He then "sought a second opinion from a tax lawyer at the law firm Seyfarth Shaw." *Id.*

After receiving that advice, Menzies moved forward by hiring Christiana to serve as trustee of the various trusts, one of which "gave Menzies the power to substitute assets into and out of the trusts." *Id.* "Using this power, [Menzies] directed Christiana to substitute assets twice." *Id.* at 2–3. Menzies "described these substitutions as the 'key' to the tax strategy." *Id.* at 3. "Once the dust settled, the scheme seemed successful. Menzies had avoided paying taxes on a $64 million stock sale." *Id.* "But a few years later, the IRS came knocking," and "audited Menzies's tax returns and disregarded the trust scheme because its 'primary purpose was to avoid paying tax on the stock sale.'" *Id.*

### II.    Menzies Executes Contracts Requiring Him To Indemnify Christiana For The Claims Asserted By Menzies In This Case.

To effectuate the above-referenced tax-avoidance strategy, Menzies executed a number of contracts that created the trusts, defined the parties' respective duties, and effectuated the tax-avoidance strategy. The trust agreements between Christiana and Menzies governed the parties'

relationship and created the trusts used in the transactions at issue. The trust agreements are attached hereto as Exhibits 1–3. The parties agreed that Christiana was not providing Menzies tax advice. Ex. 4, § 3 (Menzies "[a]cknowledges that the Trust Company, both individually and as Trustee, has not acted as a financial, tax or legal advisor to the Trust, Mr. Steven Menzies or any beneficiary in connection with the substitution of assets."); Ex. 5, § 3 (including nearly identical language as Ex. 4 ¶ 3); *see also* Ex. 3, § 11(t).

Menzies also executed two "Directions to Substitute Assets," which are attached hereto as Exhibits 4–5. These documents were executed pursuant to Menzies' "power to reacquire assets of the Menzies GRRT [one of the trusts] by substituting other assets of equivalent value." Dkt. No. 165, Second Amended Complaint ("SAC") ¶ 80. This power to substitute assets between trusts was, according to Menzies, "key to the transaction." *Id.*; *see also* Dkt. No. 353 at 3 ("[Menzies] described these substitutions as the 'key' to the tax strategy.").

Finally, Menzies executed a "Refunding Agreement and Release," which is attached hereto as Exhibit 6. The Refunding Agreement and Release summarized the actions Christiana took at Menzies' direction, and represented the last step necessary to complete the alleged tax-avoidance scheme.

Relevant to this Motion is the fact that the documents attached as Exhibits 2 and 4–6 all contained an agreement by Menzies to indemnify Christiana for any fees, costs and expenses Christiana incurred in the defense of any lawsuits—such as the present action—that arise from the transactions at issue in this case.

A.      **The 2004 Trust**

The document attached as Exhibit 2 is the "Irrevocable Trust Agreement" dated July 8, 2004 (the "2004 Trust"). The 2004 Trust was a statutory trust formed under Del. Code Ann. tit.

12, § 3801 *et seq*., and Menzies was the Settlor of the 2004 Trust. *See* Ex. 2, Introductory Clause.

Section 5(q) of the 2004 Trust contains an indemnification provision, which states, in relevant part:

> The Settlor [Menzies] agrees to indemnify and hold harmless the Trustees [Christiana], from and against any and all losses, claims, charges, liabilities, lawsuits or other expenses (including reasonable professional fees and disbursements to counsel) which may be asserted against the Trustees by reason of exercising any of the powers and directions hereunder except where any such loss, claim, charge, liability, lawsuit, or other expense may have been incurred by reason of the gross negligence or willful misconduct of the Trustees.

*Id.* at 7, § 5(q).

## B.     The 2003 And 2004 Directions To Substitute Assets

A similar provision was contained in the documents attached as Exhibit 4—the "Direction to Substitute Assets" dated October 10, 2003 ("the 2003 Direction to Substitute Assets")—and Exhibit 5—the "Direction to Substitute Assets" dated September 1, 2004 ("the 2004 Direction to Substitute Assets"). The indemnification provisions in those documents are set forth below:

> <u>2003 Direction to Substitute Assets</u>:  "[Menzies] [a]grees to indemnify and hold harmless the Trust Company, both individually and as Trustee, from and against any and all loss, cost, claim, charge, liability, suit or expense (including reasonable professional fees and disbursements of counsel) which may be asserted against the Trust Company by reason of this substitution of assets, including without limitation, any claim by any current or future beneficiary of the Trust which arises as a result of this substitution of assets, except any such loss, cost, charge, liability, suit or expenses which may be incurred by reason of the gross negligence or willful misconduct of the Trust Company as Trustee."

Ex. 4 at 2, § 5.

> <u>2004 Direction to Substitute Assets</u>:  "[Menzies] [a]grees to indemnify and hold harmless the Trust Company, both individually and as Trustee, from and against any and all loss, cost, claim, charge, liability, suit or expense (including reasonable professional fees and disbursements of counsel) which may be asserted against the Trust Company by reason of this substitution of assets, including without limitation, any claim by any current or future beneficiary of the Trust which arises as a result of this substitution of assets, except any such loss, cost, charge, liability, suit or expenses which may be incurred by reason of the gross negligence or willful misconduct of the Trust Company as Trustee."

Ex. 5 at 2, § 5.

### C.      The Refunding Agreement And Release

The fourth indemnification agreement Menzies signed, attached as Exhibit 6, is a "Refunding Agreement and Release" dated December 20, 2006. The Refunding Agreement and Release provides the following with respect to indemnification:

> [Menzies] [a]gree[s] to indemnify the Trustee and the Trustee's agents, successors and assigns, both in its corporate capacity and as Trustee, against all liability, loss or expense (including, but not limited to, Federal and state income and other taxes, costs and counsel fees) which have been incurred or may ever be incurred in connection with the transactions described above as a direct result of my actions, including but not limited to the sale, and the satisfaction of the Trust's Obligations, and to refund any other amount which may at any time and for any reason, including negligence, be determined to have been an erroneous distribution.

Ex. 6 at 2. The "transactions described above" refer to Menzies' entire tax-avoidance strategy, which the Refunding Agreement and Release describes as follows:

> By a trust agreement dated September 24, 2003, I, Steven Menzies, created an irrevocable trust called THE PERSEPHONE TRUST (the "Trust") for the benefit of my mother, Ann Menzies, and named Christiana Bank and Trust Company as trustee (the "Trustee").
>
> On September 26, 2003, I sold to the Trust the remainder interest in the Steven Menzies 2003 GRRT ("Menzies 2003 GRRT"), under an agreement dated August 25, 2003. As consideration for the sale, I received an obligation from the Trust in the principal amount of $18,965,158.59 plus interest (the "2003 Obligation").
>
> On August 12, 2004, I sold to the Trust the remainder interest in the Steven Menzies 2004 GRRT ("Menzies 2004 GRRT"), under an agreement dated July 8, 2004. As consideration for the sale, I received an obligation from the Trust in the principal amount of $53,520,889.83 plus interest (the "2004 Obligation").
>
> On May 19, 2006, pursuant to its fiduciary powers and a Stock and Warrant Purchase and Sale Agreement dated as of February 7, 2006 (the "Purchase Agreement"), the Trustee sold 3,999.4389 shares of the Class A common stock and 440.3834 shares of the Class B common stock of Applied Underwriters, Inc. to AU Holding Company, Inc., a wholly owned subsidiary of Berkshire Hathaway Inc. for a Holdback obligation (as defined in the Purchase Agreement) from Berkshire Hathaway Inc. with a face value of $6,478,954 and an Installment obligation of $58,095,339. Subsequently, a Participation Agreement (as defined in the Purchase Agreement) permitted the Trust to acquire 30,897 shares of AU Holding Company, Inc. for $30,897,000.

31092597.1

5

> Together with Principal and Interest the Trust owes me $51,113,955.14 on the 2003 Obligation and the 2004 Obligation (collectively the "Obligations") and wishes to satisfy the Obligations by delivering 28,034 shares of AU Holding Company, Inc. (which I agree is worth $42,051,000), a Holdback obligation of Berkshire Hathaway Inc. (which I agree is worth $4,859,215.50) and cash of $4,203,739.64 (collectively the "Consideration"). I agree to accept the Consideration in full satisfaction of the Obligations effective December 15, 2006.

*Id.* at 1.

*     *     *

Thus, on four separate occasions, Menzies agreed to indemnify Christiana for any costs and fees incurred in the defense of claims or lawsuits—such as Menzies' claims in the present lawsuit—that arose from Menzies' tax-avoidance scheme.

### III. Menzies Files Suit Against Christiana For Its Alleged Role In Menzies' Tax-Avoidance Scheme.

"Over the last eight years, claims and defendants have fallen like dominoes." Dkt. No. 353 at 3. Menzies filed his original complaint on April 17, 2015, alleging a number of Illinois state law claims, as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Dkt. No. 1. Christiana moved to dismiss, arguing, among other things, that Menzies had, on multiple occasions, released his claims against Christiana. Dkt. No. 28 at 4–5.

On July 15, 2016, the United States District Court for the Northern District of Illinois dismissed Menzies' original complaint, finding deficient the allegations regarding the continuity of the alleged pattern of racketeering. *See Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1100–01 (N.D. Ill. 2016). The court allowed Menzies to amend his complaint and lifted the stay of discovery so that Menzies could determine "how broadly Defendants 'marketed' the tax shelter at issue." *Id.* at 1101, 1117.

Following five months of discovery—which included six (6) depositions and written discovery—Menzies filed his First Amended Complaint. Dkt. No. 101. Christiana moved to

dismiss again based on its release arguments (among other arguments). Dkt. No. 106 at 5–7. Before the trial court could rule on Christiana's motion, Menzies sought leave to file a third complaint, and, with the court's permission, filed his Second Amended Complaint on August 8, 2017. Dkt. No. 165. For the third time, Christiana renewed its argument based on releases Menzies executed, among other arguments. Dkt. No. 178 at at 6–7.

The court granted Defendants' motions, finding that Menzies "failed to allege either closed-ended or open-ended continuity," and thus failed "to state a 'pattern of racketeering activity'" necessary to pursue a RICO claim. *Menzies v. Seyfarth, Shaw LLP*, No. 15-cv-3403, 2018 WL 4538726, at *7 (N.D. Ill. Sept. 21, 2018). The court also dismissed Menzies' state law claims on the basis that they were barred by the statute of repose set forth in the Illinois Securities Law, 735 ILCS 5/12 *et seq. Id.* at *7–9.

Menzies appealed the court's September 2018 decision to the United States Court of Appeals for the Seventh Circuit. The Seventh Circuit agreed that Menzies' RICO claims failed to sufficiently plead a pattern of racketeering activity, but reversed the district court's dismissal of Menzies' state law claims, reasoning that such claims were not barred by the Illinois Securities Law. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 333–46 (7th Cir. 2019).

Menzies thereafter filed a petition for rehearing *en banc*, which the Seventh Circuit denied. *Id.* Menzies then filed a petition for a writ of certiorari in the United States Supreme Court, which the Supreme Court denied on April 20, 2020. *Menzies v. Seyfarth Shaw LLP*, No. 19-1125, 2020 WL 1906597, at *1 (U.S. Apr. 20, 2020).

On remand, Christiana again moved to dismiss, arguing that, with the RICO claims dismissed, the district court did not have personal jurisdiction over Christiana. Dkt. No. 242. On January 19, 2021, the district court held that it lacked personal jurisdiction over Christiana and

ordered that the case be transferred to the United States District Court for the District of Delaware. Dkt. No. 251.

Christiana filed yet another motion to dismiss (the first one in this Court) on August 11, 2021, seeking the dismissal of all of Menzies' remaining claims, which, at that time, included fraudulent misrepresentation (Count III), civil conspiracy (Count IV), joint enterprise liability (Count V), negligent misrepresentation (Count VI), breach of fiduciary duty (Count VIII), and unjust enrichment (Count IX). Dkt. No. 266. The Court dismissed all claims against Christiana with the exception of Menzies' breach of fiduciary duty claim. Dkt. No. 280.

The parties then took discovery on that claim, including four additional (4) depositions, additional document productions, and additional exchanges of written discovery.  On January 17, 2023, Christiana filed a motion for summary judgment on Menzies' remaining breach of fiduciary duty claim. Dkt. Nos. 331–32. The Court granted that motion on September 29, 2023, finding that Menzies' remaining claim was barred by the applicable statute of limitations. Dkt. No. 347.

## IV.    Thus Far, Christiana Has Expended $1,174,111.68 In Fees And Costs To Defend Against Menzies' Claims.

As set forth in Exhibits 7 and 8, to date, Christiana has incurred $1,174,111.68 in attorneys' fees and costs in its defense against Menzies' claims.[1]

**LEGAL STANDARDS[2]**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A dispute is genuine if the

---

[1] Exhibit 7 contains a summary of fees and costs paid by Christiana to Shook, Hardy & Bacon LLP.  Exhibit 8 contains a summary of fees and costs paid by Christiana to Young Conaway Stargatt & Taylor, LLP.

[2] This Court already held that Delaware law applies to the contracts containing the indemnity provisions. Dkt. No. 284 at 4–5.

evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Summary judgment should be granted where there is insufficient record evidence for a reasonable factfinder to find for the plaintiff. *Id.* at 252. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* Though the Court must view the facts and draw all reasonable inferences in favor of the nonmoving party, *see In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004), "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

Whether Menzies must indemnify Christiana pursuant to the above-referenced indemnification provisions presents a question of law appropriately decided on a motion for summary judgment.[3] *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 371 (3d Cir. 2001) ("construction of an indemnity contract is a question of law for the court to decide"); *Frautschi v. Ecolab, Inc.*, No. CV 12951-VCMR, 2018 WL 5733218, at *8 (Del. Ch. Oct. 31, 2018) (considering indemnification claims on summary judgment).

## ARGUMENT

As set forth above, there are four indemnity provisions under which Christiana is entitled to recover its fees and expenses incurred in the defense of this matter. Those provisions are listed below for the Court's reference:

2004 Trust: "The Settlor [Menzies] agrees to indemnify and hold harmless the Trustees [Christiana], from and against any and all losses, claims, charges, liabilities, lawsuits or other expenses (including reasonable professional fees and disbursements to counsel) which may be asserted against the Trustees by reason of exercising any of the powers and directions hereunder except where any such loss,

---

[3] If the Court grants Christiana's Motion, Christiana will submit a fee petition substantiating the reasonableness of its request for fees/costs.

claim, charge, liability, lawsuit, or other expense may have been incurred by reason of the gross negligence or willful misconduct of the Trustees."

<u>2003 Direction to Substitute Assets</u>: "[Menzies] [a]grees to indemnify and hold harmless the Trust Company, both individually and as Trustee, from and against any and all loss, cost, claim, charge, liability, suit or expense (including reasonable professional fees and disbursements of counsel) which may be asserted against the Trust Company by reason of this substitution of assets, including without limitation, any claim by any current or future beneficiary of the Trust which arises as a result of this substitution of assets, except any such loss, cost, charge, liability, suit or expenses which may be incurred by reason of the gross negligence or willful misconduct of the Trust Company as Trustee."

<u>2004 Direction to Substitute Assets</u>:  "[Menzies] [a]grees to indemnify and hold harmless the Trust Company, both individually and as Trustee, from and against any and all loss, cost, claim, charge, liability, suit or expense (including reasonable professional fees and disbursements of counsel) which may be asserted against the Trust Company by reason of this substitution of assets, including without limitation, any claim by any current or future beneficiary of the Trust which arises as a result of this substitution of assets, except any such loss, cost, charge, liability, suit or expenses which may be incurred by reason of the gross negligence or willful misconduct of the Trust Company as Trustee."

<u>Refunding Agreement and Release</u>: "[Menzies] [a]gree[s] to indemnify the Trustee and the Trustee's agents, successors and assigns, both in its corporate capacity and as Trustee, against all liability, loss or expense (including, but not limited to, Federal and state income and other taxes, costs and counsel fees) which have been incurred or may ever be incurred in connection with the transactions described above as a direct result of my actions, including but not limited to the sale, and the satisfaction of the Trust's Obligations, and to refund any other amount which may at any time and for any reason, including negligence, be determined to have been an erroneous distribution."

## I.     The Indemnity Provisions To Which Menzies Agreed Include Menzies' Claims In This Case.

All four indemnity provisions require Menzies to indemnify Christiana for the fees and expenses it incurred defending against Menzies' claims in this case.

### A.     Broadly-Written Indemnity Provisions Are Enforced In Delaware.

All four indemnity provisions at issue contain broad language requiring Menzies to indemnify Christiana for "any and all"—in the case of the 2004 Trust, and the 2003 and 2004 Directions to Substitute Assets—or "all"—in the case of the Refunding Agreement and Release—

claims asserted against Christiana. Such phrases are broadly interpreted by Delaware courts. *See e.g.*, *Delle Donne & Assocs., LLP v. Millar Elevator Serv. Co.*, 840 A.2d 1244, 1256 (Del. 2004) (indemnity agreement covering "all expenses" was "very broad in scope"); *Blue Cube Spinco LLC v. Dow Chem. Co.*, No. CVN21C01214PRWCCLD, 2021 WL 4453460, at *16 (Del. Super. Ct. Sept. 29, 2021) (construing terms "all" and "any and all" in indemnification agreement as "broad"); *Int'l Rail Partners LLC v. Am. Rail Partners, LLC*, No. CV 2020-0177-PAF, 2020 WL 6882105, at *4 (Del. Ch. Nov. 24, 2020) (finding indemnification clause covering "any and all claims" "quite broad"); *Stockman v. Heartland Indus. Partners, L.P.*, No. CIV.A. 4227-VCS, 2009 WL 2096213, at *3 (Del. Ch. July 14, 2009) (denying motion to dismiss indemnity claim based on "broad" inclusion of "any and all claims" language).

Further, the 2004 Trust was a statutory trust formed under the Delaware Business Trust Act, Del. Code Ann. tit. 12 § 3801 *et seq*. (the "Act"). Under the Act, a statutory trust's authority to provide for indemnification is specifically set forth in § 3817, which provides: "Subject to such standards and restrictions, if any, as are set forth in the governing instrument of a statutory trust, a statutory trust shall have the power to indemnify and hold harmless any trustee or beneficial owner or other person *from and against any and all claims and demands whatsoever*." Del. Code Ann. tit. 12 § 3817(a) (emphasis added). Delaware courts have construed a nearly identical provision in the Delaware Limited Liability Act as "broadly enabling." *Int'l Rail Partners LLC*, 2020 WL 6882105, at *3 (citing Del. Code Ann. tit. 6 § 18-108). Indeed, in *International Rail Partners*, the Delaware Court of Chancery explained that, "[u]nlike typical commercial contracts, indemnification and advancement provisions in LLC agreements are derived from clear statutory authority and apply much more broadly." *Id.* at *7. The same is true of statutory trust agreements, which are governed by similar statutory provisions as LLCs. *See Nakahara v. NS 1991 Am. Tr.*,

739 A.2d 770, 782–83 (Del. Ch. 1998) (noting the "permissive language of § 3817(a) itself suggests that the General Assembly intended the [Act]'s indemnification provision to be interpreted broadly," and such "a general authorization of indemnification compels a permissive interpretation, with the language intended to authorize as much as possible and exclude only that which is expressly prohibited").

### B.    Menzies' Claims Are "Claims," "Lawsuits," And "Suits," Which Resulted In "Loss[es]," And "Expense[s]" As Defined Under The Indemnity Provisions.

As an initial matter, there can be no dispute that Menzies' claims asserted against Christiana in multiple lawsuits constitute "claims," "lawsuits," or "suits" under the 2004 Trust, and the 2003 and 2004 Directions to Substitute Assets. *See Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) ("Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning."). The words claim, lawsuit, or suit, are certainly not ambiguous, and "any and all claims" means just that.

Similarly, there can be no dispute that the fees and expenses incurred by Christiana constitute "loss[es] or expense[s]" under the Refunding Agreement and Release. *See, e.g.*, *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005) ("Indemnification encourages corporate service by capable individuals by protecting their personal financial resources from depletion by the expenses they incur during an investigation or litigation that results by reason of that service."); *Meyers v. Quiz-DIA LLC*, No. CV 9878-VCL, 2017 WL 2438328, at *6 (Del. Ch. June 6, 2017) ("In the indemnification context, the concept of losses generally includes not only fines or judgments, but also the costs of investigation and defense."); *see also* Dkt. No. 353 at 3 ("Later that year, Christiana contacted Menzies about returning his proceeds through a refund and release agreement. Menzies agreed, and Christiana returned his proceeds.").

31092597.1

12

Moreover, the only parties entitled to raise claims relating to Christiana's role under the 2003 and 2004 Directions to Substitute Assets, and the Refunding Agreement and Release, are Menzies as the Settlor, or the Trust Beneficiaries (who were either Menzies, or nominal parties, given that Menzies was the ultimate beneficiary of the entire tax-avoidance plan). Indeed, the 2003 and 2004 Directions to Substitute Assets provide indemnification for any and all loss asserted by "reason of this substitution of assets." Ex. 4 at 2, § 5; Ex. 5 at 2, § 5. No third-party could suffer an injury in fact from that substitution of assets other than Menzies or the Beneficiaries. *See e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (to establish standing in federal court plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant …"); *Dover Hist. Soc. v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1109–10 (Del. 2003) (recognizing federal standing requirements are generally the same as those for Delaware courts). The same is true of the Refunding Agreement and Release, which provides indemnification for all loss or liability "incurred in connection with the transactions described above as a direct result of [Menzies'] actions." Ex. 6 at 1–2. Accordingly, these indemnification provisions were plainly drafted with the type of claims Menzies brought here in mind. *See Schneider Nat'l Carriers, Inc. v. Kuntz*, No. CV N21C-10-157-PAF, 2022 WL 1222738, at *30 (Del. Super. Ct. Apr. 25, 2022) (finding indemnity provision that specifically covered "making any Deferred Consideration Payment, or any required Annual Contingent Payment or Annual Contingent True-Up Payment" covered first-party claims because such payments were made between the parties to the contract and therefore would not "arise from a third-party claim"); *see also Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage. We will not read a contract to render a provision or term 'meaningless

31092597.1

13

or illusory.'") (internal quotation marks and citations omitted). Menzies' claims against Christiana are precisely the type of claim or lawsuit subject to the indemnification clauses.

### C.    Menzies' Claims Arise From Indemnifiable Actions Under The Indemnity Provisions.

The next analytical step is to determine whether Christiana's fees and expenses were incurred as a result of actions that are covered by the indemnity provisions.

The 2004 Trust requires Menzies to indemnify claims asserted against Christiana "by reason of exercising any of the powers and directions" of the 2004 Trust. Ex. 2 at 7, § 5(q). The 2003 and 2004 Directions to Substitute Assets require Menzies to indemnify claims asserted against Christiana "by reason of this substitution of assets." Ex. 4 at 2, § 5; Ex. 5 at 2, § 5. Finally, the Refunding Agreement and Release requires Menzies to indemnify claims asserted against Christiana "in connection with the transactions described above," where the "transactions described above" are described as the entirety of Menzies' tax-avoidance strategy. Ex. 6 at 1–2.

Menzies sued Christiana for its role in establishing various trusts—including, but not limited to, the 2004 Trust—and taking various actions pursuant to its role as trustee of those trusts. *See* SAC ¶¶ 46, 54–64, 68, 113. Indeed, as this Court recognized, the plan "to eliminate Menzies's tax liability *legally*" was effectuated by "creating several trusts and passing assets among them like a game of hot potato." Dkt. No. 353 at 2. Pursuant to these trust agreements, Menzies had "the power to substitute assets into and out of the trusts," which he did "twice." *Id.* at 2–3. Menzies "described these substitutions as the 'key' to the tax strategy." *Id.* at 3. These "key" asset substitutions and resulting distributions to Menzies were effectuated through the 2003 and 2004 Directions to Substitute Assets, and the Refunding Agreement and Release, all of which contain indemnity provisions. *See supra* Factual Background § II.

In summary, the actions for which Christiana was sued in this case fall squarely within the parameters of indemnifiable actions under the indemnity provisions.

### D.  Menzies Failed To Establish That Christiana Was Grossly Negligent Or Engaged In Willful Misconduct.

The indemnity provisions in the 2004 Trust, and the 2003 and 2004 Directions to Substitute Assets, provide an exception to Menzies' indemnity obligations where the amounts to be indemnified were incurred "by reason of the gross negligence or willful misconduct of the Trustees." *See* Exs. 2, 4–5. [4]

Menzies originally asserted eight claims against Christiana. The RICO claim (Counts I–II) was dismissed by the United States District Court for the Northern District of Illinois, and that dismissal was affirmed by the United States Court of Appeals for the Seventh Circuit, and the United States Supreme Court. *Menzies v. Seyfarth, Shaw LLP*, No. 15-cv-3403, 2018 WL 4538726, at *7 (N.D. Ill. Sept. 21, 2018); *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 333–46 (7th Cir. 2019); *Menzies v. Seyfarth Shaw LLP*, No. 19-1125, 2020 WL 1906597, at *1 (U.S. Apr. 20, 2020). On November 10, 2021, this Court dismissed Menzies' claims for fraudulent misrepresentation (Count III), civil conspiracy (Count IV), joint enterprise liability (Count V), negligent misrepresentation (Count VI), and unjust enrichment (Count IX). Dkt. No. 80. And on September 29, 2023, this Court granted summary judgment in Christiana's favor on Menzies' sole remaining claim for breach of fiduciary duty (Count VIII). Dkt. No. 347.

Christiana has therefore defeated all claims asserted against it by Menzies, including those that could conceivably allege "gross negligence" or "willful misconduct."

---

[4] The Refunding Agreement and Release does not contain this exception.

## II.     Menzies' Affirmative Defenses Fail As A Matter Of Law.

Menzies asserts five (5) affirmative defenses to Christiana's indemnity counterclaims. *See* Dkt. No. 275 at 17. Menzies bears the burden to prove his affirmative defenses, and all five defenses fail as a matter of law. *See Dixon v. United States*, 548 U.S. 1, 2 (2006) (noting "the long-established" rule "that the one relying on an affirmative defense must set it up and establish it"); *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003) (defendant has burden of proof regarding affirmative defenses). All five defenses fail as a matter of law.

Menzies fraud defense cannot survive since Menzies failed to prove his fraud claim against Christiana. *See* Dkt. No. 280 at 2 ("Fraud charges are serious. So anyone alleging fraud must explain specifically how each defendant defrauded him. Steven Menzies has not. He describes a tax-fraud scheme but does not explain how Christiana Bank defrauded him. So all of his fraud claims against the Bank fail.").

His equitable estoppel defense fares no better. Equitable estoppel requires Menzies to show: "(1) conduct by the party to be estopped that amounts to a false representation, concealment of material facts, or that is calculated to convey an impression different from, and inconsistent with, that which the party subsequently attempts to assert, (2) knowledge, actual or constructive, of the real facts and the other party's lack of knowledge and the means of discovering the truth, (3) the intention o[r] expectation that the conduct shall be acted upon by, or influence, the other party and good faith reliance by the other, and (4) action or forbearance by the other party amounting to a change of status to his detriment." *Cornerstone Brands, Inc. v. O'Steen*, No. CIV.A. 1501-N, 2006 WL 2788414, at *3 n.12 (Del. Ch. Sept. 20, 2006) (citation omitted). Here, the Court already held:

> [Menzies] does not identify any misleading statements or actions by Christiana—
> or indeed, any direct interaction with Christiana. And he does not explain how
> Christiana would have known that the tax shelters were fraudulent. All he says is

31092597.1

16

that Christiana administered trusts and entered into transactions that someone else designed to be fraudulent.

Dkt. No. 280 at 7 (internal citations omitted). For these reasons the Court "dismiss[ed] Menzies's fraudulent-misrepresentation, negligent-misrepresentation, conspiracy, joint-enterprise, and unjust-enrichment claims." *Id.*[5]

Menzies' third defense is that Christiana's indemnity counterclaims fail for lack of consideration. In his previous summary judgment brief, Menzies argued that the Directions to Substitute Assets are unenforceable because the 2003 and 2004 GRRTs required Christiana to substitute assets at Menzies' request, meaning Christiana had a pre-existing obligation to do whatever Menzies directed them to do. Dkt. No. 335 at 14–15. But this argument fails to recognize that the trust provisions upon which Menzies relies specifically state that the Directions to Substitute Assets *had to be* effectuated through "an instrument signed and acknowledged by [Menzies] and delivered to the Trustees hereunder." Ex. 2 at 6, § 5(k). Moreover, the 2003 and 2004 GRRTs say nothing about the specific assets to be substituted, meaning that there was no binding pre-existing obligation to substitute these specific assets. *Id.*

Notably, Menzies did not make a "failure of consideration" argument with respect to the 2004 Trust, so there can be no claim that the indemnity provision in that agreement is unenforceable. *See generally* Dkt. No. 335 at 14–15. And his argument with respect to the Refunding Agreement and Release fares no better, as Menzies failed to identify any pre-existing

---

[5] The Court also made clear that Menzies' fiduciary duty claim was *not* premised on any concealment or misrepresentation of the kind needed to establish an estoppel defense. *See* Dkt. No. 280 at 6 ("Menzies's conspiracy, joint-liability, and unjust-enrichment claims allege fraud. Like a classic fraud claim, all allege that the defendants gave Menzies 'the false impression' that the tax shelters were valid and 'convey[ed] false, misleading, or omitted facts' to induce his reliance. But his fiduciary duty claim does not. That claim focuses on 'the negligence and carelessness of Christiana,' rather than some misrepresentation.") (internal citations omitted).

contractual provision whatsoever, much less establish a pre-existing obligation of Christiana. *See id.* at 15.

Menzies' fourth defense is that Christiana's indemnity counterclaims are barred by the doctrine of duress. As an initial matter, Menzies edited the Refunding Agreement and Release, so there can be no claim of duress with respect to that document. *Compare* Ex. 9 (edits provided by Menzies' agent, Sheila Lenagh) *with* Ex. 6 (executed version incorporating those edits from Menzies). Putting that agreement aside, however, to establish duress, Menzies must show: "(1) a wrongful act, (2) which overcomes the will of the aggrieved party, (3) who has no adequate legal remedy to protect himself and thereby assents to an agreement." *Standard Gen. L.P. v. Charney*, No. CV 11287-CB, 2017 WL 6498063, at *16 (Del. Ch. Dec. 19, 2017) (internal quotation marks omitted). Menzies has failed to establish that Christiana acted wrongfully, as demonstrated by this Court's dismissal of all of Menzies' claims. *See Menzies v. Seyfarth, Shaw LLP*, 2018 WL 4538726, at *7; *Menzies v. Seyfarth Shaw LLP*, 943 F.3d at 333–46; *Menzies v. Seyfarth Shaw LLP*, 2020 WL 1906597, at *1; Dkt. No. 80; Dkt. No. 353. This Court also found that "[Menzies] does not identify any misleading statements or actions by Christiana—or indeed, any direct interaction with Christiana. And he does not explain how Christiana would have known that the tax shelters were fraudulent. All he says is that Christiana administered trusts and entered into transactions that someone else designed to be fraudulent." Dkt. No. 280 at 7 (internal citations omitted). Menzies plainly cannot establish duress in light of these findings.

Menzies' fifth and final affirmative defense is that Christiana's counterclaims are barred by the doctrine of illegality. This defense fails. As an initial matter, the contracts Menzies executed are not illegal contracts simply because they did not achieve the tax objectives Menzies desired. Indeed, the tax fraud occurred not through the contracts, but through Menzies' extra-contractual

decision *not* to report the sale of his AUI stock on his tax return. In other words, it was Menzies' failure to report his capital gains—not the contracts themselves—that violated federal tax laws.

In addition, "Delaware law is cautious about nullifying contractual agreements," and, for that reason, "not all illegal contracts are unenforceable." *Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC*, No. CV 2019-0847-MTZ, 2023 WL 4857281, at *9 (Del. Ch. July 31, 2023) (citations omitted). Indeed, "courts are averse to voiding agreements on public policy grounds unless their illegality is clear and certain. Furthermore, courts exercise this authority with caution, and only in cases that are free from doubt. In short, litigants must do more than state a contract is "illegal" to render it unenforceable." *Id.* (citations and internal quotation marks omitted). Here, Menzies alleges in conclusory fashion that "Christiana's indemnification claim is barred by the doctrine of illegality." Dkt. No. 275 at 17. That is precisely the type of conclusory allegation courts reject as insufficient. *See Tygon Peak Cap. Mgmt.*, 2023 WL 4857281, at *9; *Lighthouse Behav. Health Sols., LLC v. Milestone Addiction Counseling, LLC*, No. 2022-0979-MTZ, 2023 WL 3486671, at *9 (Del. Ch. May 17, 2023) (declining to find a contract illegal, noting defendants "gave illegality very quick treatment"); *Cooper v. Pottstown Hosp. Co LLC*, 651 F. App'x 114, 116–17 (3d Cir. 2016) (finding conclusory allegations of "illegal kickbacks" insufficient to support claim of illegality under Anti-Kickback Statute); *Hessein v. Am. Bd. of Anesthesiology Inc.*, 628 F. App'x 116, 120 (3d Cir. 2015) (rejecting antitrust claim because "a conclusory allegation of agreement ... does not supply facts adequate to show illegality" under federal antitrust laws).

*   *   *

As set forth above, all of Menzies' affirmative defenses fail as a matter of law, and summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and enter an order: (1) finding that Christiana is entitled to recover its attorneys' fees, costs and expenses incurred in defending this matter; and (2) setting a briefing schedule for Christiana's fee petition to determine the amount of fees, costs and expenses Christiana is entitled to recover.

Dated: December 20, 2023

Respectfully submitted,

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

OF COUNSEL:
Gary M. Elden (#0728322) (gelden@shb.com)
Amy Y. Cho (#6303051) (acho@shb.com)
Peter F. O'Neill (#6324429)
(pfoneill@shb.com)
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
(312) 704-7700

 /s/  *William E. Gamgort*
William E. Gamgort (#5011)
Jennifer M. Kinkus (#4289)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 576-3267
wgamgort@ycst.com / jkinkus@ycst.com

*Attorneys for Defendant Wilmington Savings Fund
Society, FSB, as successor-by-merger to
Christiana Bank & Trust Company*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing **DEFENDANT CHRISTIANA BANK & TRUST COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE RIGHT TO INDEMNITY** was served upon all counsel of record in this action via the U.S. District Court CM/ECF e-filing system on December 20, 2023.


_/s/ William E. Gamgort_