IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEVEN MENZIES

     *Plaintiff,*

      v.

SEYFARTH SHAW LLP; GRAHAM
TAYLOR; and CHRISTIANA BANK &
TRUST COMPANY

     *Defendants.*

No. 21-cv-249

---

Daniel Charles Herr, LAW OFFICE OF DANIEL C. HERR LLC, Wilmington, Delaware; Jeffrey B. Charkow, Sean P. Higgins, HARRIS WINICK HARRIS LLP, Chicago, Illinois.

*Counsel for Plaintiff.*

Jennifer Marie Kinkus, William Edward Gamgort, YOUNG, CONAWAY, STARGATT & TAYLOR LLP, Wilmington, Delaware; Peter F. O'Neill, SHOOK, HARDY & BACON, LLP, Chicago, Illinois.

*Counsel for Defendants.*

---

## MEMORANDUM OPINION

May 30, 2024

---

BIBAS, *Circuit Judge*, sitting by designation.

Contractual provisions mean what they say. In four separate agreements, Steven Menzies agreed to indemnify Christiana Bank; then he sued it. Because the indemnity provisions are enforceable, I grant Christiana's motion for summary judgment.

## I. MENZIES SUES AFTER AGREEING TO INDEMNIFY CHRISTIANA

Menzies wanted to eliminate his tax liability from the multimillion-dollar sale of his insurance company. *Menzies v. Seyfarth Shaw LLP*, 2023 WL 7074015, at *1 (D. Del. Oct. 26, 2023). So he hired a firm that had pitched him a "legal[]" tax-avoidance scheme that involved creating several trusts and moving the sale proceeds through them. *Id.* He hired Christiana Bank to draft the trust documents and to serve as trustee. *Id.* At his direction, it substituted assets twice between the newly created trusts. *Id.* Then he signed a refund-and-release agreement, which let him access and withdraw the proceeds. *Id.*

Unfortunately for him, the IRS caught wind of the scheme, audited him, and concluded that the scheme was unlawful. *Id.* He had to settle with the IRS for millions. *Id.* So he went on the offensive, suing everyone involved in the scheme. D.I. 1. Nine years later, he has no claims left. All that is left in this case is Christiana's counterclaim against him for indemnification.

Menzies agreed to indemnify Christiana four times. *First*, in the trust agreement, he agreed to indemnify it "from and against any and all losses, claims, charges, liabilities, lawsuits[,] or other expenses (including reasonable professional fees and disbursements to counsel)" based on Christiana's "exercis[e] … of [its] powers" as trustee. D.I. 359-1, at 19. The indemnity provision carved out claims or losses against Christiana that stemmed from its "gross negligence or willful misconduct." *Id.*

*Second*, when Menzies directed Christiana to substitute assets, he agreed to indemnify it "from and against any and all loss, cost, claim, charge, liability, suit[,] or expense (including reasonable professional fees and disbursements of counsel) which

may be asserted against [it] by reason of this substitution of assets." D.I. 359-1, at 39. Like the trust agreement, the indemnity provision did not cover liability arising from its "gross negligence or willful misconduct." *Id.*

*Third*, the next time Menzies told Christiana to substitute assets, he agreed to an identical indemnity provision. D.I. 359-1, at 44.

*Fourth*, Menzies signed a refund-and-release agreement. In it, he agreed to indemnify Christiana "against all liability, loss[,] or expense (including … costs and counsel fees) which … may ever be incurred in connection with the transactions described above." D.I. 359-1, at 49. The "transactions described above" referred to the transfer of assets between Menzies and the trust. *Id.*

Christiana now moves for summary judgment on its counterclaim. It argues that these indemnity provisions are valid, that they cover Menzies's lawsuit, and that he has no argument against their enforcement. So, it says, Menzies must indemnify it for the fees, costs, and expenses it incurred while litigating this case. It is right.

## II. THE INDEMNITY PROVISIONS ARE ENFORCEABLE

In this summary-judgment motion, I view the facts in the light most favorable to Menzies. *Lamont v. New Jersey*, 637 F.3d 177, 179 n.1 (3d Cir. 2011). Summary judgment is appropriate if Christiana "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if a reasonable jury could resolve it in favor of either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And a fact is "material" if it "could affect the outcome." *Lamont*, 637 F.3d at 181. Christiana has met its burden.

### A. The plain text covers Menzies's lawsuit

"Delaware courts interpret contract terms according to their plain, ordinary meaning." *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012). Here, the first three indemnity provisions cover "any and all losses, claims, charges, liabilities, lawsuits[,] or other expenses (including reasonable professional fees and disbursements to counsel)." D.I. 359-1, at 19, 39, 44. In the fourth, Menzies agreed to indemnify Christiana from "all liability, loss[,] or expense." *Id.* at 49. Under Delaware law, these broadly worded indemnification agreements are enforceable. *See, e.g.*, *Delle Donne & Assocs., LLP v. Millar Elevator Serv. Co.*, 840 A.2d 1244, 1256 (Del. 2004). So the plain text of these indemnity clauses covers Menzies's suit against Christiana.

Each indemnity provision also requires some causal link. In the trust agreement, the indemnification clause covers claims based on Christiana "exercising any of [its] powers and directions" under the trust. D.I. 359-1, at 19. Likewise, the two asset-substitution agreements permit indemnification for claims stemming from that specific "substitution of assets*." Id.* at 39, 44. And under the refund-and-release agreement, Christiana gets indemnity for losses or expenses "in connection with the [tax avoidance scheme,] as a direct result of [his] actions." *Id.* at 49.

This case triggered each indemnity provision. Menzies sued Christiana for its role in establishing the trusts and for taking certain actions as trustee. That triggered the indemnity clauses in the trust and refund-and-release agreements. He also alleged that the two substitutions of assets were "key" to the tax-avoidance strategy. 2d Am. Compl. ¶ 80. Thus, the indemnity provisions in those agreements apply too.

In short, Menzies cannot and does not dispute that the plain text of these four indemnity provisions applies to his suit against Christiana.

**B. The indemnity provisions permit first-party claims**

Still, Menzies resists this reading. He first tries to evade the plain text by insisting that "there remain genuine issues of material fact as to whether Christiana engaged in willful misconduct." Answering Br. 9. Yet he offers no proof to back up that claim. Calling something fraud does not make it so, and conclusory allegations cannot "defeat a motion for summary judgment." *Cohen v. City of Philadelphia*, 736 F.2d 81, 83 n.4 (3d Cir. 1984), *abrogated on other grounds by Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985); *see also Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382–83 n.12 (3d Cir. 1990) ("[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."). So this argument fails.

Menzies next argues that under Delaware law, indemnity provisions do not cover claims between contracting parties—so-called "first-party claims." Answering Br. 5. For two independent reasons, though, this argument is unpersuasive.

*1. The Delaware Business Trust Act applies, allowing broad indemnification.* Menzies cites no case that distinguishes first- and third-party claims in a trust agreement's indemnity clause. Rather, he points to cases that interpreted indemnity clauses in "arm's length, bilateral, commercial contracts." *Int'l Rail Partners LLC v. Am. Rail Partners, LLC*, 2020 WL 6882105, at *7 (Del. Ch. Nov. 24, 2020). But those cases are inapt. Unlike standard commercial contracts, "indemnification … provisions

in [trust] agreements are derived from clear statutory authority and apply much more broadly." *Id.*

So too here. In the trust agreement, the parties agreed that the trust was "governed by the provisions of" the Delaware Business Trust Act. D.I. 359-1, at 17. Under that law, "a statutory trust" has "the power to indemnify and hold harmless any *trustee … from and against any and all claims and demands whatsoever*." DEL. CODE ANN. tit. 12, §3817(a) (2024) (emphasis added). This "general authorization of indemnification compels a permissive interpretation, with the language intended to authorize as much as possible and exclude only that which is expressly prohibited." *Nakahara v. NS 1991 Am. Tr.*, 739 A.2d 770, 783 (Del. Ch. 1998). The trust agreement did not limit this broad authorization of indemnification.

Menzies urges me to ignore the Act because he—not the statutory trust—is on the hook for indemnification. But for the sake of this claim, he and the trust are one and the same. The statutory trust, through him as its representative, implemented the indemnity clause. And in the trust agreement, he agreed to be "personally liable on any indebtness secured by any of the property held [t]hereunder." D.I. 359-1, at 19. Plus, Menzies unilaterally controlled the trusts. I cannot ignore that reality. So this argument fails.

Public policy also supports applying the indemnity clause's plain language. If I accept Menzies's position, a statutory trust agreement "that uses the precise language of the statute to provide for indemnification … does not mean what it says." *Int'l Rail Partners LLC*, 2020 WL 6882105, at *7. Not only would that frustrate the

6

"broad grant of statutory authority," *id.* at *8, but it would also undermine Delaware's "strong public policy" of "encourag[ing] responsible persons to occupy positions of business trust," *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *7 (Del. Ch. Jan. 23, 2006).

In light of the statutory framework and public policy, I find that the indemnity provision in the trust agreement covers first-party claims. *See Int'l Rail Partners*, 2020 WL 6882105, at *8.

*2. The indemnity provisions intended to include first-party claims.* Even if the Act did not apply, I would still rule for Christiana. True, Delaware courts presume that standard indemnity provisions do not cover first-party claims in bilateral commercial contracts. *Id.* at *4. But this presumption is rebuttable if Christiana can show "a clear and unequivocal articulation of … intent" that these indemnity provisions cover first-party claims. *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, 2012 WL 1415466, at *2 (Del. Super. Ct. Mar. 29, 2012), *superseded on other grounds by Noranda Aluminum Hldg. Corp. v. XL Ins. Am., Inc.*, 269 A.3d 974 (Del. 2021). It can.

To start, Menzies argues that Christiana cannot make this showing because the agreements did not use "specific language covering fee-shifting." Answering Br. 6. But there is no bright-line test for first-party indemnification, and parties need not use magic words to get it. *See TranSched*, 2012 WL 1415466, at *2. So though the inquiry may start with the specific language used, it does not end there.

7

Rather, to determine whether there is a "clear and unequivocal articulation" of intent to cover first-party claims, I must construe the agreements "as a whole." *Schneider Nat'l Carriers, Inc. v. Kuntz*, 2022 WL 1222738, at *31 (Del. Super. Ct. Apr. 25, 2022) (internal quotation marks omitted). Because "[e]ach provision is unique," they "must be decided under the facts of that particular case." *TranSched*, 2012 WL 1415466, at *2. Three clues reveal a "clear and unequivocal" intent that these indemnity provisions cover first-party claims.

*First*, the provisions were not run-of-the-mill. Instead, they expressly covered acts that would give rise to almost exclusively first-party claims. Take the refund-and-release agreement: In it, Menzies agreed to indemnify Christiana for its losses "in connection with the transactions described above as a direct result of [his] actions." D.I. 359-1, at 49. The "transactions described above" refer to the transfer of assets between Menzies and the trust. *Id.* Likewise, the two asset-substitution agreements provided indemnification for Christiana's losses incurred "by reason of this substitution of assets." *Id.* at 39, 44. In each case, only the IRS could have a third-party claim. All other claims would be like the ones here—first-party claims between Menzies and Christiana. So excluding those claims would gut the provision.

*Second*, the lack of a fee-shifting clause points to a "clear and unequivocal" intent that these provisions cover first-party claims. In *Schneider*, for example, the court reasoned that having a fee-shifting clause weighs against the party seeking indemnification. 2022 WL 1222738, at *31. So not having one suggests that the parties

intended indemnification to cover first-party claims. *Id.* (collecting cases). That reasoning applies equally here.

*Third*, none of the four agreements has a written-notice provision for indemnification. In *TranSched*, the court interpreted an indemnity clause that required one party to make a "written claim for indemnification." 2012 WL 1415466, at *3. Because the "provision simply makes no sense in the context of a first-party action," the court found that the indemnity provision did not cover first-party claims. *Id.* As there is no written-notice provision here, that also favors Christiana.

Construing the contract as a whole, I find a "clear and unequivocal" articulation of an intent to cover first-party claims.

\* \* \* \* \*

Menzies agreed to indemnify Christiana from suit, then he sued it. I will hold him to his word. Since the indemnification agreements apply to his suit and cover first-party claims, I grant Christiana's motion for summary judgment.